DAVID W. GERMAN (SBN 252394)
Email: dgerman@navlaw.net
NEWMAN.AARONSON.VANAMAN LLP
14001 Ventura Boulevard
Sherman Oaks, CA 91423
Telephone: (818) 990-7722
Facsimile: (818) 501-1306

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.C., a minor, by and through his guardian ad litem S.B., | ) CASE NO.: |
| Plaintiff, | ) Exhibit A to Complaint |
| vs. | ) |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, a local educational agency, | ) |
| Defendant. | ) |

BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
STATE OF CALIFORNIA

_____

## CASE NO. 2019080679

_____

PARENT ON BEHALF OF STUDENT,

v.

LOS ANGELES UNIFIED SCHOOL DISTRICT.

_____

# DECISION

JULY 6, 2020

On August 16, 2019, the Office of Administrative Hearings, called OAH, received a due process hearing request from Parent on behalf of Student, naming Los Angeles Unified School District.  On September 19, 2019, OAH granted the parties' joint request to continue the matter.

Administrative Law Judge Paul H. Kamoroff heard this matter by videoconference in California on June, 2, 3, 4, and 9, 2020.

Attorney David W. German represented Student.  Student's Mother attended the hearing.  Student did not attend the hearing.  Attorney Summer D. Dalessandro

1

represented Los Angeles Unified.  Diana Massaria, Los Angeles Unified's Administrative Coordinator, attended the hearing each day.

At the parties' request, OAH continued the matter to June 29, 2020, for written closing briefs.  The record was closed and the matter was submitted on June 29, 2020.

## ISSUES

1. Did Los Angeles Unified deny Student a free appropriate public education, called FAPE, between the end of the 2018-2019 school year and the start of the 2019-2020 school year, by failing to educate him in the least restrictive environment?

2. Did Los Angeles Unified deny Student a FAPE at the April 3, 2019 individualized education program, called IEP, team meeting by predetermining the length of his extended school year services?

## JURISDICTION

This hearing was held under the Individuals with Disabilities Education Act, its regulations, and California statutes and regulations.  (20 U.S.C. § 1400 et. seq.; 34 C.F.R. § 300.1 (2006) et seq.; Ed. Code, § 56000 et seq.; Cal. Code Regs., tit. 5, § 3000 et seq.) The main purposes of the Individuals with Disabilities Education Act, referred to as the IDEA, are to ensure:

- all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living, and

- the rights of children with disabilities and their parents are protected.

(20 U.S.C. § 1400(d)(1); See Ed. Code, § 56000, subd. (a).)

The IDEA affords parents and local educational agencies the procedural
protection of an impartial due process hearing with respect to any matter relating to the
identification, assessment, or educational placement of the child, or the provision of a
FAPE, to the child.  (20 U.S.C. § 1415(b)(6) & (f); 34 C.F.R. § 300.511; Ed. Code, §§ 56501,
56502, 56505; Cal. Code Regs., tit. 5, § 3082.)  The party requesting the hearing is limited
to the issues alleged in the complaint, unless the other party consents, and has the
burden of proof by a preponderance of the evidence.  (20 U.S.C. § 1415(f)(3)(B); Ed.
Code, § 56502, subd. (i); *Schaffer v. Weast* (2005) 546 U.S. 49, 57-58, 62 [126 S.Ct. 528,
163 L.Ed.2d 387]; and see 20 U.S.C. § 1415(i)(2)(C)(iii).)  As the petitioner, Student had the
burden of proof for the issues heard for this matter.  The factual statements in this
Decision constitute the written findings of fact required by the IDEA and state law.  (20
U.S.C. § 1415(h)(4); Ed. Code, § 56505, subd. (e)(5).)

## THE STUDENT

Student was 10 years old and in third grade at the time of the hearing.  Student
resided with his Parent within Los Angeles Unified's boundaries at all relevant times.
Student was eligible for special education and related services under the eligibility
category of intellectual disability, due to Down's syndrome.

Down's syndrome is a genetic disorder that results in learning disabilities
characterized by below average intelligence.  As a result, Student had learning delays in
all academic areas, including reading, writing, and math.  Student's intellectual disability
impacted his involvement and progress in general education to such a degree that his
academic instruction was based on modified achievement standards, called an alternate
curriculum.  This meant the core curriculum used by typically developing children was

significantly modified for Student to access his education.  Student also demonstrated behavior problems, delayed motor skills, and difficulty in speech and language.

During the 2018-2019 regular school year, the school year prior to the time frame in dispute, Los Angeles Unified placed Student in a regular, second grade class, with an alternate curriculum, aide support and related services.  Similarly, for the 2019-2020 regular school year, the school year following the time frame in dispute, Los Angeles Unified placed Student in a regular, third grade class, with an alternate curriculum, aide support and related services.  There is no dispute regarding Student's placement in regular classes during these regular school years.  Student's claims arise during the summer break between the end of the 2018-2019 regular school year and the start of the 2019-2020 regular school year, called the 2019 extended school year.

## ISSUE 1:  DID LOS ANGELES UNIFIED DENY STUDENT A FAPE BY FAILING TO OFFER THE LEAST RESTRICTIVE ENVIRONMENT DURING THE 2019 EXTENDED SCHOOL YEAR?

Student asserts he was denied a FAPE during the 2019 extended school year because Los Angeles Unified failed to offer him placement in the least restrictive environment.  Student primarily argues that a regular classroom with non-disabled peers was the least restrictive environment.  In the alternative, Student asserts that a mild/moderate special day class was the least restrictive environment.  Los Angeles Unified responds that it was not required to offer Student the least restrictive environment during the 2019 extended school year.

California Code of Regulations, title 5, section 3043, provides that extended school year services shall be provided for each individual with exceptional needs who

requires special education and related services in excess of the regular academic year. Students to whom extended programming must be offered under section 3043:

> . . . shall have disabilities which are likely to continue indefinitely or for a prolonged period, and interruption of the pupil's educational programming may cause regression, when coupled with limited recoupment capacity, rendering it impossible or unlikely that the pupil will attain the level of self-sufficiency and independence that would otherwise be expected in view of his or her disabling condition.

Here, there is no dispute that Student met the requirements for special education and related services during the extended school year.  There is also no dispute that Los Angeles Unified offered Student special education and related services for the extended school year.  Rather, Student's issue involves the location of special education during the extended school year.  Student complains it should have been offered in the least restrictive environment.

The least restrictive environment, also known as mainstreaming, is an IDEA provision designed to indicate a strong preference for educating disabled children with non-disabled children as much as possible.  (*Board of Education v. Rowley*, 458 U.S. 176, 181, fn. 4 (1982) ("The Act requires participating States to educate handicapped children with nonhandicapped children whenever possible.").)  To provide the least restrictive environment, school districts must ensure, to the maximum extent appropriate: 1) that children with disabilities are educated with non-disabled peers; and 2) that special classes or separate schooling occur only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.  (20 U.S.C. § 1412(a)(5)(A); 34 C.F.R. § 300.114(a) (2006); Ed. Code, § 56031.)  Based upon the foregoing, Student asserts Los Angeles Unified was

obligated to educate him in a regular class with non-disabled peers during the 2019
extended school year.

THE APRIL 3, 2019 IEP

Los Angeles Unified convened an annual IEP team meeting for Student on April 3,
2019.  Student was nine years old and in the second grade at Hart Elementary School, a
comprehensive public school operated by Los Angeles Unified.  Student continued to
qualify for special education and related services under the eligibility category
intellectual disability.  Mother attended the meeting.  Student did not attend the
meeting.  For Los Angeles Unified, administrator Daniel Saborio, special education
teacher Jennifer Walker, general education teacher Jennifer Hans, a school nurse, a
speech language pathologist, an occupational therapist, a recreational therapy specialist,
and an adapted physical education specialist, attended the IEP team meeting.  The
purpose of the IEP team meeting was to review Student's progress during the
2018-2019 school year, develop an educational plan for the following 2019-2020 regular
school year, and determine if Student required services for the pending 2019 extended
school year.

The IEP team first reviewed Student's progress towards prior, annual goals, and
his present levels of performance.  Student met annual goals in reading, writing, math,
behavior, fine motor, and social functioning.  Student did not meet goals in locomotor,
fine motor, articulation, and pragmatic language.  Based upon observations by school
staff and Parent, Student continued to demonstrate delays in reading, writing, math,
communication, behavior, locomotor, fine motor, articulation, pragmatic language, and
social functioning.

To meet those delays, the IEP team jointly drafted 10 new annual goals in the areas of behavior, functional reading, functional writing, functional math, fine motor, communication, locomotor, articulation, and social functioning.  Each goal was measurable, easy to understand, and had short term objectives.

To meet those goals, Los Angeles Unified offered Student various accommodations, an alternate curriculum, and special education and related services. For the regular school year, Los Angeles Unified offered Student occupational therapy; adapted physical education; recreational therapy; speech and language therapy; intensive behavior intervention including an individual behavior aide and a behavior intervention plan; and inclusion support for moderate/severe disabilities in the areas of functional reading, functional writing, functional math, behavior, and communication.

Inclusion support for moderate/severe disabilities was a related service whereby a special education teacher modified Student's work and helped educate him in a regular class.  Student's intellectual disability impacted his progress in the general education reading, writing, and math curriculums.  The degree of the impact was significant and required that Student's instruction be based on alternate achievement standards using an alternate curriculum.  This meant Student's school work was substantially modified from the core curriculum taught in regular classes.  As a result, Student worked on material far below the grade level taught to his non-disabled peers.  For example, while Student's non-disabled peers worked on grade-level math, Student's work was modified to kindergarten-level math.  For writing, Student's non-disabled peers wrote multiple-paragraph essays, while Student worked on completing one sentence. Student's work was modified by a special education teacher, called an inclusion facilitator, who had a moderate/severe teaching credential and experience modifying grade-level curriculum.  The inclusion facilitator worked with Student in a regular

classroom, while a general education teacher concurrently taught the unmodified core curriculum to non-disabled students in the same classroom.  This inclusion service permitted Student to work on his IEP goals and receive instruction individualized to his learning level while integrated in a regular class with non-disabled peers.

Similarly, for State and district-wide assessments, Student participated in alternate assessments based upon a modified curriculum.

With the various supports and related services offered, including an alternate curriculum with inclusion support, the IEP team determined that Student's least restrictive environment during the regular school year was a regular class.

The IEP team next considered extended school year services.  The IEP team, including Parent, agreed that Student demonstrated regression during prolonged breaks, coupled with difficulty recouping information, and therefore required extended school year services.  However, Los Angeles Unified did not operate regular classes during the extended school year for elementary school children.  Nor did Los Angeles Unified offer inclusion support for elementary school children during the summer, because there were no regular classes in which to include students with disabilities.  The IEP team discussed other placement options for the extended school year, including a special day class environment.  Los Angeles Unified operated both a mild/moderate special day class and a moderate/severe special day class during the extended school year.  The mild/moderate special day class was identified as a core curriculum, specific learning disorder, special day class, called SLD SDC.  The SLD SDC used the core curriculum taught by a special education teacher with a mild/moderate teaching credential.  Work was taught at grade level, without modifications.  The moderate/severe special day class, called the alternate curriculum SDC, was taught by a special education teacher with a moderate/severe teaching credential.  The work in this

class was modified.  Each of these two special day classes consisted solely of disabled students and neither placement offered mainstreaming opportunities.  During the IEP team meeting, Parent requested the SLD SDC for Student's extended school year.  However, Student required an alternate curriculum to meet his IEP goals, which included goals for functional writing, functional reading, and functional math.  Based upon Student's need for individually modified work, Los Angeles Unified offered the alternate curriculum SDC, which permitted modification of school work to Student's learning level.  In addition, to meet Student's unique needs, Los Angeles Unified offered Student an individual behavior aide, adapted physical education, speech and language services, occupational therapy, and recreational therapy during the extended school year.

Los Angeles Unified informed Parent of her procedural rights and safeguards at the beginning of the IEP team meeting, and provided her a copy of those rights.  Parent asked questions during the meeting, provided information regarding Student's unique needs, and actively participated throughout the IEP team meeting.  The meeting was not rushed and took four hours to complete.  Los Angeles Unified noted Mother's concerns in writing on the IEP documents, and permitted Mother to hand write additional concerns onto the IEP document.  Los Angeles Unified read aloud information written into the IEP during the meeting, had staff available who were familiar with Los Angeles Unified school programs and the continuum of placement options, including for the extended school year.  Los Angeles Unified provided Parent a copy of the IEP at the end of the meeting, along with a "Parent Input Survey," which allowed Parent to provide additional information and concerns pertaining to Student's IEP and the IEP process.  During hearing, Parent testified that she was an active participant during the April 3, 2019 IEP team meeting.

Parent consented to all parts of the April 3, 2019 IEP, except for the extended school year placement. Parent disagreed with the extended school year placement because she did not believe the alternate curriculum SDC was the least restrictive environment for Student. During the IEP team meeting and in the IEP document, Parent made clear her preference for the SLD SDC. Los Angeles Unified denied Parent's request and Student filed the complaint for this matter on August 19, 2019. Student did not attend any school placement during the 2019 extended school year.

During hearing, Student argued that Los Angeles Unified should have offered placement in a regular class, the least restrictive environment, for the 2019 extended school year. There was some merit to Student's argument. For example, Student's IEP fully integrated him in a regular class during the 2018-2019 regular school year. At the end of the school year, the April 3, 2019 IEP again offered Student placement in a regular class with non-disabled peers for the 2019-2020 regular school year. The April 3, 2019 IEP team reviewed Student's progress towards goals, present levels of performance, and unique needs. On this basis, the IEP team determined that, with substantial supports, services, and modified work, Student was able to access regular classes with non-disabled peers, the least restrictive environment. (*Ms. S. v. Vashon Island School District* (9th Cir. 2003) 337 F.3d 1115, 1136-1137; *Sacramento City Unified School District v. Rachel H.* (9th Cir. 1994) 14 F.3d 1398, 1404.)

Moreover, during hearing, there was no factual dispute to Student's argument that he benefited from regular classes with non-disabled peers. For example, Student's witnesses, including private therapist Kathleen Whitbread, PhD., and Los Angeles Unified moderate/severe program coordinator James Koontz, EdD., credibly testified that children with Down's syndrome who had greater exposure to non-disabled peers had better life outcomes, including in employment and independent living, when compared

to children with Down's syndrome who were educated in classes segregated from non-disabled peers.  Los Angeles Unified witnesses, including inclusion facilitator Hiyas Ambrosio and school administrators Daniel Saborio and Tiffany Sepe, did not dispute this line of testimony.  Nor did Los Angeles Unified witnesses dispute that Student was successfully mainstreamed during the regular school year when provided an alternate curriculum and substantial supports.  Consequently, a preponderance of evidence supported Student's assertion that he benefited from placement in a regular class.

However, a preponderance of evidence showed that Los Angeles Unified did not operate regular classes for elementary school children during the summer 2019.  In his closing brief, Student mistakenly points to a Title 1 program to argue that Los Angeles Unified operated regular classes during the 2019 extended school year.  Title l, Part A of the Elementary and Secondary Education Act, called Title 1, as amended by the Every Student Succeeds Act, provides federal funding to schools that serve an area with high poverty to help students who are at-risk of falling behind academically.  The funding is limited to providing supplemental instruction for students who are economically disadvantaged and at-risk of failing to meet state standards.  During summer 2019, Los Angeles Unified had a Title 1 funded program, called Extended Learning Opportunity Summer, to assist at-risk students enrolled in the lowest performing schools in the school district.  The program was a pre-set language arts credit recovery program.  Student's school, Hart Elementary, was not on the list of low performing schools eligible to receive Title 1 funding.  Nor was Student at-risk or in need of credit recovery for language arts.  During hearing, Los Angeles Unified's academic intervention administrator Nancy Robinson and Dr. Koontz credibly testified that the Extended Learning Opportunity Summer program was not a regular class and therefore was not considered a least restrictive environment option for Student.  Moreover, Ms. Robinson established the Title 1 funded program could only be lawfully offered to at-risk students

who attended a Title 1 selected school.  Therefore, Los Angeles Unified could not lawfully offer Student this program.  Student submitted no countervailing evidence to this testimony.  For these reasons, Student did not prove that Los Angeles Unified offered regular summer school classes for students of his age or grade.

Consequently, evidence established that Los Angeles Unified did not operate a summer program for children without disabilities during the 2019 extended school year. This fact was dispositive to this matter.

## THE LEAST RESTRICTIVE ENVIRONMENT AND EXTENDED SCHOOL YEAR

California law relieves a school district of the obligation to place an inclusion student in a general education program if the district offers no regular summer school programs:

> If during the regular academic year an individual's IEP specifies integration in the regular classroom, a public education agency is not required to meet that component of the IEP if no regular summer school programs are being offered by that agency.

(5 C.C.R. § 3043, subd. (g).)

Student argues the above regulation is invalid because it conflicts with the IDEA's requirement that a student must be placed in the least restrictive environment.  Student failed to cite applicable authority to support his claim.  Rather, Student relied on *T.M. by A.M. v. Cornwall Central School District*, (2d Cir. 2014) 752 F.3d 145, 163, a Second Circuit Court of Appeals decision that held the least restrictive environment provision applies to extended school year, regardless if the school district operated regular classrooms during the summer: "Under the IDEA, a disabled student's least restrictive

environment refers to the least restrictive environment consistent with that student's needs, not the least restrictive environment that the school district chooses to make available."  Student overlooks that other Circuits and courts have held that a school district that does not operate a regular education placement during the summer is not obligated to create one to satisfy the least restrictive requirements of the IDEA.  (*T.R. v. Kingwood Township Board of Education* (3d Cir. 2000) 205 F.3d 572, 579; *Travis G. v. New Hope–Solebury School District* (E.D.Pa.2008) 544 F.Supp.2d 435, 443; *Reusch v. Fountain* (D.Md.1994) 872 F.Supp. 1421, 1448 ("the Court does not read the IDEA to mandate indifference to legitimate practical considerations or interference with other school programming to create artificial [least restrictive environment] settings during the summer months.").)

As applicable in this case, California implements the IDEA through its special education laws.  (*Miller v. San Mateo-Foster City Unified School District* (N.D. Cal. 2004) 318 F.Supp.2d 851, 860.)  Per California special education laws, Los Angeles Unified was not obligated to create a regular class for the extended school year to meet the least restrictive environment requirement for Student, or to secure a regular class in a different school district or through a private agency.  (Cal. Code Regs, tit. 5, § 3043, subd. (g); *Student v. San Francisco Unified School District* (2009) OAH Case No. 2009040611.)

Moreover, the United States Department of Education, the agency that enforces the IDEA, has long interpreted its requirement of a continuum of alternative placements, including regular classes, does not to apply to summer programs:

> Because [extended school year] services are provided during a period of
> time when the full continuum of alternative placements is not normally
> available for any students, the Department does not require States to

ensure that a full continuum of placements is available solely for the

purpose of providing [extended school year] services.

(*Letter to Myers* (OSEP 1989) 16 IDELR 290.)

The purpose of extended school year placement and services is to prevent regression and recoupment difficulties during the summer break. Therefore, a student's placement and services for the extended school year may differ from placement and services during the regular school year. (*Id.*)

Based upon the foregoing, because Los Angeles Unified did not operate regular classes for non-disabled children during the 2019 extended school year, it did not violate the least restrictive environment requirement even though Student's IEP called for integration in a regular class during the regular school year. Consequently, Student failed to prove that he was denied a FAPE because Los Angeles Unified did not offer him placement in a regular class during the 2019 extended school year.

In the alternative, Student argues that Los Angeles Unified should have offered him a different special day class than the one offered. During the hearing, Mother and Dr. Whitbread asserted that Los Angeles Unified should have offered Student the SLD SDC for the 2019 ESY, instead of the alternate curriculum SDC.

Mother briefly observed an alternate curriculum SDC at a different school site on one occasion during the 2018 extended school year. That classroom consisted of children who, like Student, had disabilities that required an alternate curriculum. On this basis, Mother believed the placement was too restrictive. Mother had not observed the alternate curriculum SDC that Los Angeles Unified operated during the 2019 extended school year. Mother had also not observed the SLD SDC that Los Angeles operated during the 2019 extended school year, but presumed the program included higher

14

functioning children than those who participated in the alternate curriculum SDC. Parent therefore believed the SLD SDC was less restrictive than the alternate curriculum SDC. Although Student's expert witness Dr. Whitbread had not assessed Student or observed either placement, she similarly opined that the SLD SDC was less restrictive than the alternate SDC. Consistent with this theory, Student argued that children in the SLD SDC, a mild/moderate special day class, more closely resembled non-disabled children than children in the alternate curriculum SDC, a moderate/severe special day class. Therefore, Student argued the SLD SDC was less restrictive than the alternate curriculum SDC.

Student errs because the least restrictive environment provision does not differentiate between mild/moderate and moderate/severe special day class placements. These special day class categories are not distinct environments on the continuum of placement options. (Ed. Code, §§ 56360, 56361, 56364.2.) Rather, the least restrictive environment provision ensures that children with disabilities are educated with non-disabled peers to the maximum extent possible. It does not require school districts to determine which child with a disability most closely resembled a non-disabled peer. Here, the evidence demonstrated there was no distinction in the restrictiveness of the two special day classes as neither contained non-disabled students. The alternate curriculum SDC offered by Los Angeles Unified, and the SLD SDC preferred by Parent, were in the same category of restrictiveness on the continuum of placement options. For example, both placements consisted only of special education students and were taught by special education teachers. Both placements were on a public day school campus. And neither program offered Student participation with general education students or opportunities for mainstreaming. Consequently, there was no legal basis for Student's argument.

During hearing, Parent and Student's witnesses suggested the alternate curriculum SDC was not appropriate for reasons that fell outside of the least restrictive environment provision.  For example, Dr. Whitbread opined that materials used in the alternate curriculum SDC were inadequate because they were research-based and not evidence-based.  However, these allegations exceeded the scope of the narrow issue presented, whether Los Angeles Unified violated the least restrictive environment provision during the 2019 extended school year.  Student's additional claims raised during hearing will therefore not be determined by this Decision.

Based upon the foregoing, Student failed to show by a preponderance of evidence that Los Angeles Unified denied him a FAPE by failing to provide the least restrictive environment during the 2019 ESY.

## ISSUE 2: DID LOS ANGELES UNIFIED DENY STUDENT A FAPE AT THE APRIL 3, 2019 IEP TEAM MEETING BY PREDETERMINING THE LENGTH OF THE EXTENDED SCHOOL YEAR SERVICES?

Student asserts that Los Angeles Unified predetermined the length of the 2019 extended school year program.  Los Angeles Unified responds that it considered Parent's input and Student's unique needs when formulating the program offer.

Special education law places a premium on parental participation in the IEP process.  (20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.501(b); Ed. Code, § 56304, subd. (a).)

Predetermination of an IEP offer violates the above requirement.  For IEP team meetings, predetermination occurs when an educational agency has decided on its offer prior to the meeting, including when it presents one placement option at the meeting and is unwilling to consider other alternatives.  (*H.B. v. Las Virgenes Unified School*

*District* (9th Cir. 2007 239 Fed.Appx. 342, 344-345 [nonpub. opn.].)  A district may not

arrive at an IEP team meeting with a "take it or leave it" offer.  (*JG v. Douglas County*

*School District* (9th Cir. 2008), 552 F.3d 786, 801, fn. 10.)  A school district cannot

independently develop an IEP, without meaningful parental participation, and then

present the IEP to the parent for ratification.  (*Ms. S. v. Vashon Island School District*

(9th Cir. 2003) 337 F.3d 1115, 1131, superseded on other grounds by statute.)

Predetermination is a procedural violation.  A procedural violation constitutes a

denial of FAPE only if it impeded the child's right to a FAPE, significantly impeded the

parents' opportunity to participate in the decision making process regarding the

provision of a FAPE to their child, or caused a deprivation of educational benefits for the

child.  (20 U.S.C. § 1415(f)(3)(E); 34 C.F.R. § 300.513(a)(2); Ed. Code, § 56505, subd. (f)(2);

see also, *W.G. v. Board of Trustees of Target Range School Dist.* (9th Cir. 1992) 960 F.2d

1479, 1483-1484).

Student's issue is limited to the length of Los Angeles Unified's extended school

year.  The last day of the 2018-2019 regular school year was on June 7, 2019, and the

first day of the 2019-2020 school year was August 20, 2019.  Sandwiched between the

two school years was a summer break, during which extended school year services were

provided.  For Los Angeles Unified's 2019 extended school year, instruction began on

June 26, 2019, and lasted through July 24, 2019, four hours and 20 minutes each

weekday.  Student complains the length of the extended school year program,

20 instructional days, was predetermined.

This issue is highly technical, as Parent did not raise the length of the extended

school year program as a concern during the April 3, 2019 IEP team meeting.  Nor did

Parent raise this concern when she testified during the hearing.  In significant part,

Student abandoned this issue during the hearing.  There was no evidence submitted

that demonstrated Student required additional extended school year services as a result of his disability.

Although Dr. Whitbread opined that extended school year programs should be eight weeks, she provided little basis for this opinion. Dr. Whitbread admitted her opinion was not specific to Student, or even to children with Down's syndrome in general. Dr. Whitbread had not assessed Student or observed the extended year school programs operated by Los Angeles Unified, and she was unable to correlate her opinion to Student's unique needs. This opinion was also contradicted by Dr. Whitbread's testimony in support of the SLD SDC, as that program was the same duration as the alternate curriculum SDC, 20 instructional days. For these reasons, little weight was given to Dr. Whitbread's opinion regarding the length of the extended school year. No other evidence was submitted that questioned the appropriateness of the length of the extended school year program. Consequently, even if predetermination occurred regarding the length of the extended school year program, Student failed to prove it impeded Student's right to a FAPE, or denied him an educational benefit.

Similarly, Student failed to show that any assumed predetermination significantly impeded Parent's opportunity to participate in the decision making process regarding the provision of a FAPE. To the contrary, a preponderance of evidence established that Parent actively participated during the April 3, 2019 IEP team meeting, during which the extended school year offer was formulated. Los Angeles Unified informed Parent of her procedural rights and provided her a copy of those rights. The meeting was not rushed and took hours to complete. Los Angeles Unified solicited, considered, and incorporated input from Parent. Parent participated with Los Angeles Unified staff regarding all aspects of Student's development and education program. Los Angeles Unified staff who attended the IEP team meeting were familiar with school programs

and the continuum of placement options, including for the extended school year.  For example, Daniel Saborio was an experienced site administrator who was familiar with the extended school year programs operated by Los Angeles Unified and the continuum of placement options available to all students.  Parent and Los Angeles Unified staff shared their perspectives on Student's needs, asked questions, and discussed various elements of the IEP.  In addition, Parent's concerns were included in writing on the IEP document.  Los Angeles Unified provided Parent a copy of the IEP and a written survey for Parent to provide additional comments regarding Student's educational program.  During hearing, Parent testified that she was an active participant during the April 3, 2019 IEP team meeting.

While Los Angeles Unified did not agree to Parent's preferred placement in the SLD SDC for the extended school year, that does not mean Parent did not participate in the development of the IEP.  An IEP need not conform to a parent's wishes to be sufficient or appropriate.  (*Shaw v. District of Colombia* (D.D.C. 2002) 238 F.Supp.2d 127, 139 [The IDEA does not provide for an "education designed according to the parent's desires."].)  The IDEA does not empower parents to make unilateral decisions about programs funded by the public.  (*Slama v. Independent School District Number 2580* (D.Minn. 2003) 259 F. Supp.2d 880, 885 [refusal to assign service providers of parent's choice does not result in a denial of a FAPE.]; *N.R. v. San Ramon Valley Unified School District* (N.D.Cal. January 25, 2007, No. C 06-1987 MHP) 2007 WL 216323, at *7 [parents are not entitled to their preferred provider.].)  Parents, no matter how well motivated, do not have a right to compel a school district to provide a specific program or employ a specific methodology in providing education for a disabled child.  (*Rowley*, supra, 458 U.S. at p. 208.)  Los Angeles Unified considered Parent's request for the SLD SDC, but reasonably determined that Student required an alternate curriculum SDC in light of his disability.  Student required work modified from the core curriculum to meet his

19

functional writing, functional reading, and functional math goals, and the alternate curriculum SDC provided those modifications.  Along with an individual behavior aide, adapted physical education, speech and language services, occupational therapy, and recreational therapy, Los Angeles Unified offered an extended school year program that was designed to meet Student's individual needs.  Moreover, no IEP team member, including Parent, requested additional services or believed Student required more than 20 instructional days for the extended school year.  Consequently, Student failed to prove that Los Angeles Unified predetermined the IEP offer or, if it was predetermined, impeded Student's right to a FAPE, denied him an educational benefit, or significantly impeded Parent's opportunity to participate in the decision making process regarding the provision of a FAPE for Student.

In addition, Student's issue overlooks practical considerations that must be considered by a local educational agency.  Extended school year programs, like the regular school year, must be designed in advance of the program's implementation to ensure the hiring of necessary staff, the acquisition of classrooms, and the determination of class sizes.  Like the regular school year, the length of extended school year programs is codified.  Per California law, Los Angeles Unified was permitted to provide extended school year services for 20 instructional days.  (Cal. Code Regs., tit. 5, § 3043, subd. (d).) Los Angeles Unified reasonably relied on State regulations when formulating extended school year programs.  Student failed to show that Los Angeles Unified's adherence to State regulatory schemes for the length of school year programs amounted to predetermination.

For the foregoing reasons, Student failed to show by a preponderance of evidence that Los Angeles Unified denied him a FAPE by predetermining the length of the 2019 extended school year.

## CONCLUSIONS AND PREVAILING PARTY

As required by California Education Code section 56507, subdivision (d), the hearing decision must indicate the extent to which each party has prevailed on each issue heard and decided.

1. Did Los Angeles Unified deny Student a FAPE, by failing to educate him in the least restrictive environment during the 2019 extended school year?
   Los Angeles Unified prevailed on this issue.

2. Did Los Angeles Unified deny Student a FAPE at the April 3, 2019 IEP team meeting, by predetermining the length of his extended school year services?
   Los Angeles Unified prevailed on this issue.

## ORDER

Student's claims for relief are denied.

## RIGHT TO APPEAL THIS DECISION

This is a final administrative decision, and all parties are bound by it.  Pursuant to Education Code section 56505, subdivision (k), any party may appeal this Decision to a court of competent jurisdiction within 90 days of receipt.

DocuSigned by:

*Paul H. Kamoroff*

743826F41397447...

Paul H. Kamoroff

Administrative Law Judge

Office of Administrative Hearings