**David W. German, SBN 252395**
dgerman@vanamangerman.com
**VANAMAN GERMAN LLP**
14001 Ventura Boulevard
Sherman Oaks, CA 91423
Tel: (818) 990-7722
Fax: (818) 501-1306

**Melinda Bird, SBN 102236**
melinda.bird@disabilityrightsca.org
**Andria Seo, SBN 327069**
andria.seo@disabilityrightsca.org
**Lauren Lystrup, SBN 326849**
lauren.lystrup@disabilityrightsca.org
**DISABILITY RIGHTS CALIFORNIA**
350 South Bixel Street, Suite 290
Los Angeles, CA 90017
Tel:    (213) 213-8000
Fax:    (213) 213-8001

*Attorneys for Plaintiff M.C.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.C., a minor, by and through his guardian ad litem S.B., on behalf of themselves and all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT, and CALIFORNIA DEPARTMENT OF EDUCATION,<br><br>          Defendants. | Case No.: 2:20-CV-09127-CBM-E<br><br>**Plaintiff's Opposition to Defendant California Department of Education Motion to Dismiss Plaintiff's Second Amended Complaint**<br><br>Date Action Filed: October 5, 2020<br>Judge: Hon. Consuelo B. Marshall<br>Courtroom: 8B, 8th Floor<br><br>Hearing Date: May 11, 2021<br>Time: 10:00 a.m. |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF RELEVANT FACTS AND STATUTORY SCHEME.........2

   A.  CDE's role .............................................................................................2

   B.  Federal and State ESY regulations.........................................................3

   C.  Plaintiff M.C. and the administrative record...........................................4

III. STANDARD OF REVIEW ...............................................................................6

IV. ARGUMENT......................................................................................................6

   A.  M.C. has stated a claim under IDEA against CDE. .....................................6

       1.  Overwhelming authority establishes that M.C. has a private right of action against CDE.................................................................................6

          a.  The Ninth Circuit's decision in M.M. v. Lafayette Sch. Dist. is inapplicable and does not support dismissal.....................................9

          b.  In the alternative, an implied private right of action exists under the IDEA. ...........................................................................................11

       2.  M.C. has sufficiently alleged that CDE's actions and inactions denied him a FAPE. ...................................................................................12

          a.  The state ESY regulation violates IDEA. ......................................13

          b.  CDE fails to ensure that local districts provide an appropriate type and duration of ESY services. .............................................................15

       3.  M.C. has exhausted administrative remedies under the IDEA. ............16

   B.  M.C has stated a claim under the ADA and Section 504 against CDE. .....18

       1.  M.C. alleges that, as a result of the State ESY regulation, he was denied accommodations he needed to access his education.............................18

       2.  M.C has sufficiently alleged that CDE is liable for the discrimination he experienced, even if CDE did not directly provide his services. ......21

1

V.  CONCLUSION.................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,
815 F.3d 1195 (9th Cir. 2016) ...........................................................19

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
752 F.3d 145 (2d Cir. 2014) ........................................................ 14, 15

*Alexander v. Choate*,
469 U.S. 287 (1985) ............................................................... 18, 19, 23

*Armstrong v. Brown*,
732 F.3d 955 (9th Cir. 2013) ............................................................22

*Armstrong v. Schwarzenegger*,
622 F.3d 1058 (9th Cir. 2010) ..........................................................22

*Beth V. by Yvonne V. v. Carroll*,
87 F.3d 80 (3rd Cir. 1996) ..................................................................9

*Bitsilly v. Bureau of Indian Affairs*,
253 F. Supp. 2d 1257 (D.N.M. 2003) ...............................................12

*Bonner v. Lewis*,
857 F.2d 559 (9th Cir. 1988) ............................................................19

*Brach v. Newsom*,
No. 2:20-cv-06472-SVW-AFM, 2020 WL 7222103 (C.D. Cal. Dec. 1,
2020) ..................................................................................................17

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*,
806 F.3d 451 (9th Cir. 2015) ............................................................23

*Camacho v. Bridgeport Fin.*,
Inc., 430 F.3d 1078 (9th Cir. 2005) ..................................................11

*Castle v. Eurofresh, Inc.*,
731 F.3d 901 (9th Cir. 2013) ............................................................22

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

*Cordero v. Penn. Dep't of Educ.*,
   795 F. Supp. 1352 (M.D. Pa. 1992)........................................................8

*Corey H. v. Bd. of Educ. of City of Chicago*,
   995 F. Supp. 900 (N.D. Ill. 1998)..........................................................8

*Cort v. Ash*,
   422 U.S. 66 (1975)...................................................................11, 12

*D. D. by & through Ingram v. Los Angeles Unified Sch. Dist.*,
   984 F.3d 773 (9th Cir. 2020) ..............................................6, 15, 16, 19

*Doe v. Ariz. Dept. of Educ.*,
   111 F.3d 678 (9th Cir. 1997) .............................................................7

*Dunlap v. Ass'n of Bay Area Gov'ts*,
   996 F. Supp. 962 (N.D. Cal. 1998).....................................................24

*Dunn v. Dunn*,
   318 F.R.D. 652 (M.D. Ala. 2016), *modified on other grounds sub
   nom. Braggs v. Dunn*, No. 2:14CV601-MHT, 2020 WL 2395987
   (M.D. Ala. May 12, 2020) ..................................................................24

*Emma C. v. Eastin*,
   2015 WL 5029283 (N.D. Cal. Aug. 25, 2015), *aff'd sub nom. Emma v.
   Eastin*, 673 F. App'x 637 (9th Cir. 2016) ........................................7, 10

*Emma C. v. Eastin*,
   985 F. Supp. 940 (N.D. Cal. 1997).....................................................22

*Everett H. v. Dry Creek Joint Elementary Sch. Dist.*,
   5 F. Supp. 3d 1184 (E.D. Cal. 2014) ...............................................7, 25

*Foman v. Davis*,
   371 U.S. 178 (1962)...........................................................................25

*Fry v. Napoleon Community Schools*,
   __U.S.__, 137 S. Ct. 743 (2017) ........................................................18

*Gadsby v. Grasmick*,
   109 F.3d 940 (4th Cir. 1997) ............................................................8, 9

*Everett H. ex rel. Havey v. Dry Creek Joint Elementary Sch. Dist.*,
   2015 WL 5444704 (E.D. Cal. Sept. 15, 2015) ....................................................10

*Hoeft v. Tucson Unified Sch. Dist.*,
   967 F.2d 1298 (9th Cir. 1992) ...........................................................................7

*Idaho Migrant Council v. Idaho Bd. of Educ.*,
   647 F.2d 69 (9th Cir. 1981) .............................................................................21

*J.M. v. Tennessee Dep't of Educ.*,
   358 F. Supp. 3d 736 (M.D. Tenn. 2018) ...........................................................8

*J.N. v. Oregon Dep't of Educ.*,
   No. 6:19-CV-00096-AA, 2020 WL 5209846 (D. Or. Sept. 1, 2020) .................8

*Jackson v. Pine Bluff Sch. Dist.*,
   No. 4:16CV00301, 2017 WL 2296896 (E.D. Ark. May 12, 2017)....8, 12, 13, 22

*John T. v. Iowa Dep't of Educ.*,
   258 F.3d 860 (8th Cir. 2001) .........................................................................8, 9

*Kalliope R. v. N.Y. State Dep't of Educ.*,
   827 F. Supp. 2d 130 (E.D.N.Y. 2010) ...............................................................8

*Kerr Center Parents Ass'n. v. Charles*,
   897 F.2d 1463 (9th Cir. 1990) ...........................................................................7

*Lake Washington Sch. Dist. No. 414 v. Office of Superintendent of Pub.
   Instruction*,
   634 F.3d 1065 (9th Cir. 2011) .........................................................................11

*Larry P. by Lucille P. v. Riles*,
   793 F.2d 969 (9th Cir. 1984) ...........................................................................22

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002) .........................................................................21

*M.M. v. Lafayette Sch. Dist.*,
   767 F.3d 842 (9th Cir. 2014) ..................................................................9, 10, 11

*Mark H. v. Lemahieu*,
   513 F.3d 922 (9th Cir. 2008) .....................................................................19, 21

vi

*Martinez v. Newsom*,
   No. 5:20-cv-01796-SVW-AFM, 2020 WL 7786543 (C.D. Cal. Nov.
   24, 2020) ........................................................................................................ 17

*Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Educ.*,
   No. 2:11-cv-3471, 2013 WL 1326301 (E.D. Cal. Mar. 29, 2013) ................ 7, 12

*New Jersey Prot. & Advocacy, Inc. v. New Jersey Dep't of Educ.*,
   563 F. Supp. 2d 474 (D.N.J. 2008) ........................................................... 8

*Paul G. v. Monterey Peninsula Unified Sch. Dist.*,
   933 F.3d 1096 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2672 (2020) ............... 17

*Payne v. Peninsula Sch. Dist.*,
   653 F.3d 863 (9th Cir. 2011) .................................................................. 17

*Quatroche v. East Lyme Bd. of Educ.*,
   604 F. Supp. 2d 403 (D. Conn. 2009) ..................................................... 8

*J.R. ex rel. R. v. Waterbury Bd. of Educ.*,
   272 F. Supp. 2d 174 (D. Conn. 2001) ..................................................... 11

*S.B. by & through Kristina B. v. California Dep't of Educ.*,
   327 F. Supp. 3d 1218 (E.D. Cal. 2018) ...........................................7, 10, 17

*Smith v. Orcutt Union Sch. Dist.*,
   No. 2:20-cv-00087-RGK-MAA, 2021 WL 527124 (C.D. Cal. Feb. 10,
   2021) ....................................................................................................... 19

*St. Tammany Parish Sch. Bd. v. Louisiana*,
   142 F.3d 776 (5th Cir. 1998) .................................................................. 9

*State of Connecticut Office of Prot. & Advocacy v. Connecticut*,
   706 F. Supp. 2d 266 (D. Conn. 2010) ..................................................... 24

*Straube v. Florida Union Free Sch. Dist.*,
   801 F. Supp. 1164 (S.D.N.Y. 1992) ........................................................ 8

*Student [M.C.] v. Cal. Dept. of Educ.*,
   OAH Case No. 2021040099 (April 16, 2021) ......................................... 6

*Summer H. v. Fukino*,
  No. Civ. 09–00047 SOM/BMK, 2009 WL 1249306, (D. Haw. May 6,
  2009) ...................................................................................................................16

*T.B. v. Bryan Indep. Sch. Dist.*,
  No. H-07-00168, 2007 WL 922215 (S.D. Tex. Mar. 22, 2007).....................8, 12

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc) ..........................................................16

*Vinson v. Thomas*,
  288 F.3d 1145 (9th Cir. 2002) ...........................................................................18

## **Statutes**

20 U.S.C. § 1400(d)(1)(A) ...................................................................................12

20 U.S.C. § 1401(29) ............................................................................................14

20 U.S.C. § 1403 ...................................................................................................11

20 U.S.C. § 1412 ...................................................................................................11

20 U.S.C. § 1412(a) ..........................................................................................9, 10

20 U.S.C. § 1412(a)(1) ...........................................................................................2

20 U.S.C. § 1412(a)(1)(A) ......................................................................................3

20 U.S.C. § 1412(a)(5) ...........................................................................................2

20 U.S.C. § 1412(a)(5)(A) ....................................................................................14

20 U.S.C. § 1412(a)(10)(B)(i) ..............................................................................20

20 U.S.C. § 1412(a)(10)(C)(ii) .............................................................................20

20 U.S.C. § 1412(a)(11)(A) ....................................................................................3

20 U.S.C. § 1412(a)(11)(A)(i) ................................................................................2

20 U.S.C. §1412(a)(14) ........................................................................................11

20 U.S.C. § 1415 ..............................................................................................7, 11

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

20 U.S.C. § 1415(i) ................................................................................................ 10

20 U.S.C. § 1415(i)(2) ........................................................................................... 12

20 U.S.C. §§ 1415(i)(2), (i)(3) ................................................................................ 6

20 U.S.C. § 1415(i)(2)(A) ........................................................................... 9, 11, 16

20 U.S.C. § 1415(a) ......................................................................................... 9, 10

20 U.S.C. § 1415(b)(6) ................................................................................... *passim*

20 U.S.C. § 1415(f) ................................................................................................ 16

20 U.S.C. § 1415(l) ............................................................................................... 16

20 U.S.C. § 1416(a)(1)(C) ...................................................................................... 3

29 U.S.C. § 794(a) ................................................................................................ 18

42 U.S.C. § 12132 ................................................................................................ 18

Cal. Ed. Code § 56031 .......................................................................................... 14

Cal. Ed. Code § 56040.1 ................................................................................... 3, 14

Cal. Ed. Code § 56100 ............................................................................................ 3

Cal. Ed. Code § 56100(i) ...................................................................................... 13

Cal. Ed. Code § 56135 ............................................................................................ 3

Cal. Ed. Code § 56205 ............................................................................................ 3

Cal. Ed. Code § 56361 .......................................................................................... 14

## **Rule & Regulations**

28 C.F.R. § 35.102(a) ........................................................................................... 23

28 C.F.R. § 35.130(b)(1) ........................................................................... 18, 22, 23

28 C.F.R. § 35.130(b)(1)(v) .................................................................................. 23

28 C.F.R. § 35.130(b)(3) ................................................................................. 18, 24

28 C.F.R. § 35.130(b)(7)(i) ........................................................................................ 18

28 C.F.R. § 35.130(d) ................................................................................................ 18

34 C.F.R. § 300.33 .................................................................................................... 13

34 C.F.R. § 300.106 ................................................................................................ 2, 3

34 C.F.R § 300.106(a)(3) ................................................................................ 3, 4, 5, 13

34 C.F.R. § 300.114-120 .......................................................................................... 14

34 C.F.R. § 300.115 .............................................................................................. 2, 14

34 C.F.R. § 300.149(a) .............................................................................................. 3

45 C.F.R. § 84.4(b) .................................................................................................. 23

45 C.F.R. § 84.4(b)(4) .............................................................................................. 24

Cal. Code Regs. tit. 5, § 3043(d) .......................................................................... 4, 15

Cal. Code Regs. tit. 5, § 3043(g) .......................................................................... 4, 13

Cal. Code of Regs, tit. 5, § 3043 ......................................................................*passim*

## **Other Authorities**

H.R. Rep. 101-544, 101st Cong. (1990) ................................................................... 11

*Letter to Myers*, 16 IDELR 290 (December 18, 1989) ............................................ 14

*Letter to Myers*, 213 IDELR 255 (August 30, 1989) .............................................. 14

*Letter to Skiba*, 18 IDELR 592 (December 16, 1991) ............................................. 14

## I.   INTRODUCTION

Defendant California Department of Education ("CDE") attempts to evade responsibility for the widespread discrimination this case challenges: CDE's ongoing failures to meet its obligations under the Individuals with Disabilities Education Act ("IDEA"), Title II of the Americans with Disabilities Act ("Title II"), and Section 504 of the Rehabilitation Act ("Section 504") to ensure that all special education students in California receive a free appropriate public education ("FAPE") during the summer period without discrimination. Plaintiff M.C.'s Second Amended Complaint ("SAC"), ECF No. 35, articulates and seeks to remedy this discrimination and the injuries that have resulted from CDE's failure to comply with these federal disability rights laws.

As M.C. alleges, a state regulation, Cal. Code of Regs, tit. 5, § 3043, results in discrimination against students who require special education services during the summer period, or extended school year ("ESY"). Authorized by these regulations, local school districts throughout California have instituted policies and practices regarding ESY services that contradict federal disability rights laws. As a result, thousands of students are deprived of appropriate ESY services in the most integrated setting. Despite this systemic problem, CDE—the state educational agency that oversees all local school districts—has failed to exercise its duty to supervise these districts and enforce the requirements of the IDEA, Title II, and Section 504.

In its Motion to Dismiss Second Amended Complaint ("MTD"), ECF No. 39, CDE argues that M.C. has failed to plausibly state claims against the agency. CDE attempts to portray itself as having little authority over California's students and no direct relationship with them. But CDE's arguments are based on gross misinterpretations of federal law.

Contrary to CDE's assertions, M.C. has fully exhausted his administrative remedies. It is undisputed that M.C. pursued an administrative complaint with the Office of Administrative Hearings ("OAH") against Los Angeles Unified School District ("LAUSD") for its failure to provide appropriate ESY services in his least

1  restrictive environment. It is also undisputed that M.C. went through a full

2  administrative hearing and obtained a final decision from OAH. M.C. has thus

3  exhausted his administrative remedies—there can be no other conclusion here.

4  Further, CDE attempts to deflect direct responsibility for any failures to provide

5  appropriate extended school year services onto local school districts. But the plain

6  language of the federal statutes and its regulations, as well as extensive case law in the

7  Ninth Circuit and throughout the country, make clear that M.C. does have a private

8  right of action against CDE under the IDEA and that CDE is ultimately responsible

9  for the education of California's students. Consequently, CDE is liable for its own

10  actions and those of local school districts that result in a denial of FAPE and

11  discrimination.

12  For these reasons, Plaintiff M.C.'s allegations, taken as true, demonstrate

13  violations of the IDEA, Title II, and Section 504. As a result, the Court should deny

14  Defendant CDE's motion in its entirety. Alternatively, the Court should grant Plaintiff

15  M.C. leave to amend.

16  **II.    STATEMENT OF RELEVANT FACTS AND STATUTORY SCHEME.**

17  **A.    CDE's role**

18  CDE is the state educational agency for California. SAC ¶ 32. CDE concedes

19  that it has "general supervisory responsibility over special education in California."

20  MTD 7. The IDEA explicitly states that state education agencies such as CDE are

21  responsible for ensuring that "the requirements of this subchapter are met," 20 U.S.C.

22  § 1412(a)(11)(A)(i). States must monitor local school districts and enforce "this

23  subchapter." *Id.* § 1416(a)(1)(C).

24  States that receive funding under the IDEA accept the condition that they must

25  "ensure" that a FAPE—including ESY services when needed—is available to every

26  child with a disability, and is provided in the child's least restrictive environment. 20

27  U.S.C. §§ 1412(a)(1), (a)(5); 34 C.F.R. §§ 300.106, 300.115. CDE has an affirmative

28  statutory responsibility to ensure that children in California receive FAPE and that

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1  school districts comply with the IDEA. 20 U.S.C. §§ 1412(a)(1)(A), 1412(a)(11)(A),
2  1416(a)(1)(C); 34 C.F.R. § 300.149(a); *see also* Cal. Ed. Code §§ 56100 and 56205.

3  Under state law, CDE's executive officer—the State Superintendent of Public
4  Instruction—is "responsible for assuring provision of, and supervising, education and
5  related services to individuals with exceptional needs" pursuant to the IDEA. Cal. Ed.
6  Code § 56135. And all educational agencies, including CDE, shall "address the least
7  restrictive environment for individuals with exceptional needs" by ensuring, "[t]o the
8  maximum extent appropriate, individuals with exceptional needs … are educated with
9  children who are nondisabled." *Id.* § 56040.1.

10  **B.  Federal and State ESY regulations**

11  For some special education students, an interruption in their education over the
12  summer can cause regression and learning loss that will be difficult for the students to
13  recoup. SAC ¶ 28. In such cases, the IDEA regulations require that school districts
14  "ensure that extended school year services are available as necessary to provide a
15  FAPE" if the student's IEP team determines these are needed. 34 C.F.R. § 300.106. In
16  addition, an educational agency may not "(i) limit extended school year services to
17  particular categories of disability; or (ii) unilaterally limit the type, amount, or
18  duration of those services. *Id.* § 300.106 (a)(3).

19  A corresponding state regulation also addresses ESY services. Cal. Code of
20  Regs, tit. 5, § 3043. This regulation provides that school districts in California must, in
21  accordance with 34 C.F.R. § 300.106, provide extended school year programs for
22  students for whom "interruption of the[ir] educational programing may cause
23  regression" with "limited recoupment capacity." However, the state regulation also
24  limits ESY:

25  If during the regular academic year an individual's IEP specifies
26  integration in the regular classroom, a public education agency is not
     required to meet that component of the IEP if no regular summer school
27  programs are being offered by that agency.

28

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1   Cal. Code Regs. tit. 5, § 3043(g). Plaintiff alleges that the regulation permits school

2   districts to consider a limited continuum of placements, without integrated settings,

3   for the extended school year, even for students such as M.C. for whom general

4   education is their least restrictive environment. SAC ¶ 94.

5        Finally, the state regulation addresses the duration of ESY services, which

6   "shall be provided for a minimum of 20 instructional days." Cal. Code Regs. tit. 5, §

7   3043(d). CDE has failed to clarify and instruct local school districts that students may

8   require more than 20 days of extended school year services to prevent regression,

9   based on their individual needs. SAC ¶ 99. Nor has CDE monitored to ensure that

10  school districts are not limiting the type, amount or duration of ESY services, in

11  violation of 34 C.F.R § 300.106(a)(3). SAC ¶ 99.

12       Here, Plaintiff alleges that LAUSD and other districts rely on Cal. Code of

13  Regs, tit. 5, § 3043 to limit ESY in several ways. SAC ¶¶ 96, 97, 99, 100. They deny

14  appropriate ESY services to disabled students who are otherwise integrated in regular

15  classrooms, even when these students share the same risk of regression over the

16  summer as students in other types of placement. *Id.* ¶¶96. This occurs because districts

17  offer students such inappropriate, highly segregated placements, as LAUSD did to

18  M.C., that families have no alternative but to do without, *id.* ¶¶ 57, 95–97. Districts

19  fail and refuse to consider contracting with non-district staff and agencies to offer

20  ESY services in more integrated settings, although they do contract for other services.

21  *Id.* ¶ 116-117. Districts also routinely limit ESY to only 20 days, regardless of need.

22  *Id.* ¶ 99. CDE has failed to monitor, supervise or instruct local school districts about

23  these practices. *Id.* ¶ 100.

24       **C.    Plaintiff M.C. and the administrative record**

25       Plaintiff M.C., currently a fourth-grade student, has Down's Syndrome, is

26  eligible for special education. *Id.* ¶¶ 52-53. He has been educated in general education

27  settings within LAUSD since the first grade and made significant progress there. SAC

28  ¶ 54. The IEP at issue in this case is from April 9, 2019. At that IEP meeting, the IEP

1   team agreed that M.C.'s least restrictive environment was a general education

2   classroom. *Id*. ¶ 59. The team also agreed that M.C.'s skills would deteriorate without

3   extended programming during the summer and that he required extended school year

4   services in order to receive a FAPE. *Id*. ¶ 60.

5   However, LAUSD did not offer a general education ESY class in 2019. *Id*.

6   Relying on Cal. Code of Regs, tit. 5, § 3043, LAUSD refused to offer M.C. a summer

7   program that complied with his IEP, which required placement with typically

8   developing peers and access to the core curriculum. *Id*. ¶ 59-61. Instead, the IEP team

9   instead offered an ESY class that used an "alternate curriculum," which was designed

10   for students with academic skills far below M.C.'s.[1] *Id*. ¶¶ 58, 74. The IEP team did

11   not discuss the length of the ESY services. *Id*. ¶ 60. The District representatives stated

12   that they had no discretion in developing and determining MC's ESY services,

13   including the length of the services. *Id*. ¶¶ 61-65.

14   Instead, LAUSD policy dictated that IEP teams could offer only the alternate

15   curriculum ESY class to all students whose IEPs indicated that they were on the

16   alternate curriculum – with no room for individualization or discretion by the IEP

17   team. *Id*. LAUSD's IEP teams could only determine whether a student was eligible for

18   ESY and could not make decisions about what type of ESY program would be most

19   appropriate for the student. *Id*. ¶¶ 61-65.

20   CDE has allowed these practices, and similar ones by other school districts, to

21   continue, and has failed to supervise districts and instruct them that they are still

22   bound by the IDEA when determining ESY services. *Id*. ¶ 100.

23   Plaintiff filed a request for due process with OAH against LAUSD, due to

24

25   [1] M.C.'s IEP states that he is on what LAUSD calls an "alternate curriculum," but this is only for
26   assessment purposes. *Id*. ¶ 55. LAUSD's distinction between the core curriculum and the alternate
     curriculum is an artificial one, as the general education classes M.C. has attended use the core
27   curriculum, and M.C. participates in that curriculum, though it is modified to his academic abilities.
     *Id*. ¶¶ 54-55. And, he benefits greatly from interaction with his non-disabled peers, or those with
28   more typically developing social skills. *Id*. ¶¶ 54, 76.

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1    LAUSD's failure to provide FAPE during the 2019 extended school year period. *Id.* ¶

2    50. Following a four-day administrative hearing, the Administrative Law Judge

3    ("ALJ") issued his decision. *Id.* ¶ 51. The ALJ found that M.C. does benefit from an

4    integrated classroom, Exhibit A to SAC at 10–11, ECF No. 35-1, but relied on Cal.

5    Code of Regs, tit. 5, § 3043 to conclude the LAUSD had no obligation to secure a

6    regular summer school class for M.C. with another district or private agency, *id.* at 13.

7    The ALJ ultimately concluded that LAUSD did not deny M.C. a FAPE. *Id.* at 20.[2]

8        Plaintiff filed the instant suit as a party aggrieved by the findings and decision

9    of OAH regarding Plaintiff's proper educational placement and provision of FAPE.

10   SAC ¶ 3. He challenges CDE's policies and practices regarding ESY services, its

11   implementation of an ESY regulation that conflicts with IDEA, and its failure to

12   supervise and investigate the denial of appropriate ESY services by local school

13   districts such as LAUSD. *Id.* ¶ 93–100.

14   **III.    STANDARD OF REVIEW**

15       In reviewing Rule 12(b) dismissals, courts "accept as true the complaint's

16   factual allegations, and … construe those allegations in the light most favorable to the

17   plaintiff." *D. D. by & through Ingram v. Los Angeles Unified Sch. Dist.*, 984 F.3d 773,

18   781–82 (9th Cir. 2020) (citations omitted) ("*D.D. v. LAUSD*").

19   **IV.    ARGUMENT**

20       **A. <u>M.C. has stated a claim under IDEA against CDE.</u>**

21          **1.  Overwhelming authority establishes that M.C. has a private right of**

22              **action against CDE.**

23       The IDEA creates an express private right of action for a party aggrieved by the

24   findings and decision in an underlying due process hearing. 20 U.S.C. §§ 1415(i)(2),

25   (i)(3). The IDEA allows parties to sue "with respect to any matter relating to the

26   _____

27   [2] Out of an abundance of caution, Plaintiff filed a due process complaint against CDE on April 2,
     2021. OAH dismissed the case for lack of jurisdiction. *Student [M.C.] v. Cal. Dept. of Educ.*, OAH

28   Case No. 2021040099 (April 16, 2021).

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1  identification, evaluation, or educational placement of the child, or the provision of a

2  free appropriate public education to such child." 20 U.S.C. § 1415(b)(6).

3       Despite this clear language, CDE argues here that M.C. has no private right of

4  action against it under IDEA. MTD 7. Within California, federal district courts have

5  repeatedly rejected this same claim from CDE and denied its motions for dismissal

6  because "the express private right of action provided in § 1415 is broad – it

7  encompasses *any matter* relating to the identification, evaluation, or educational

8  placement of the child, or the provision of a free appropriate public education to such

9  child." *S.B. by & through Kristina B. v. California Dep't of Educ.,* 327 F. Supp. 3d

10  1218, 1241 (E.D. Cal. 2018) ("*Kristina B.*"). *Accord Emma C. v. Eastin*, 2015 WL

11  5029283, at *5 (N.D. Cal. Aug. 25, 2015), *aff'd sub nom. Emma v. Eastin*, 673 F.

12  App'x 637 (9th Cir. 2016); *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F.

13  Supp. 3d 1184, 1194 (E.D. Cal. 2014) (no dismissal where student identified "illegal

14  policies and practices on CDE's part"); *Morgan Hill Concerned Parents Assoc. v. Cal.*

15  *Dep't of Educ.*, No. 2:11-cv-3471, 2013 WL 1326301, at *7, 10 (E.D. Cal. Mar. 29,

16  2013) (states can be held liable if they "shirk their responsibility" to "ensure[] FAPE

17  by monitoring, investigating and enforcing the IDEA").

18       The Ninth Circuit has not squarely ruled on this question[3] but acknowledges

19  that "the states have primary responsibility for ensuring that local educational

20  agencies comply with the requirements of the IDEA." *Hoeft v. Tucson Unified Sch.*

21  *Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).

22

23  [3] The Ninth Circuit has accepted and ruled upon claims against a state educational agency, without

24  discussing a student's private right of action under the IDEA, in matters relating to the educational placement or the provision of a free appropriate public education to a student with a disability. *Kerr*

25  *Center Parents Ass'n. v. Charles*, 897 F.2d 1463, 1470, 1472 (9th Cir. 1990) (finding that the Oregon SEA was responsible for ensuring FAPE and failed to insure that adequate funding would be

26  provided for the education of students at a care facility for disabled students); *Doe v. Ariz. Dept. of*

27  *Educ.*, 111 F.3d 678, 681 (9th Cir. 1997) (recognizing IDEA claims against SEAs around the country in discussion of when administrative exhaustion is required).

28

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

Notably, four other federal courts of appeal (and a score of district courts[4]) have rejected similar claims by state educational agencies ("SEAs"). For example, in *Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir. 1997), the Fourth Circuit held that a student who was denied FAPE had a valid cause of action against the Maryland Department of Education. The court reviewed the legislative history of IDEA, which confirmed that "while different agencies may deliver services under IDEA, 'the responsibility must remain in a central agency overseeing the education of handicapped children'[.]" *Id.* at 943 (citation omitted). *Accord, John T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 864 (8th Cir. 2001) ("Indeed, several circuits have held State Agencies liable when they have failed to ensure Local Agencies' implementation of

---

[4] Federal district courts in addition to those in California have accepted IDEA claims against state educational agencies. *See J.N. v. Oregon Dep't of Educ.*, No. 6:19-CV-00096-AA, 2020 WL 5209846, at *10 (D. Or. Sept. 1, 2020) ("although school districts formulate and implement IEPs, the State has an affirmative statutory duty to monitor, investigate, and enforce the IDEA requirements and to assist the districts to ensure that they comply with state and federal law"); *Jackson v. Pine Bluff Sch. Dist.*, No. 4:16CV00301, 2017 WL 2296896, at *5-7 (E.D. Ark. May 12, 2017) (denying SEA's motion to dismiss IDEA claims; an SEA "can be held liable for IDEA violations when it fails to comply with its duty to assure that the IDEA'S requirements are implemented" and "for failing to ensure that a disabled student is provided with a FAPE" (citations omitted)); *T.B. v. Bryan Indep. Sch. Dist.*, No. H-07-00168, 2007 WL 922215, at *2-3 (S.D. Tex. Mar. 22, 2007); (denying motion to dismiss SEA; SEA may be held liable "as the agency primarily responsible for the implementation of the IDEA"); *Quatroche v. East Lyme Bd. of Educ.*, 604 F. Supp. 2d 403, 412 (D. Conn. 2009) ("The state education agency is a proper party to actions involving claims of systemic violations of the IDEA"); *Corey H. v. Bd. of Educ. of City of Chicago*, 995 F. Supp. 900, 913-15 (N.D. Ill. 1998) ("the statutes and case law make it abundantly clear that the ISBE is responsible for ensuring that the local school districts' evaluations and placements systematically comply with the provisions of IDEA and the LRE mandate"); *Straube v. Florida Union Free Sch. Dist.*, 801 F. Supp. 1164, 1179 (S.D.N.Y. 1992) (SEA "is essentially responsible for the actions taken by the local educational agency."); *Cordero v. Penn. Dep't of Educ.*, 795 F. Supp. 1352, 1362 (M.D. Pa. 1992) ("[t]he IDEA imposes on the state an overarching responsibility to ensure that the rights created by the statute are protected, regardless of the actions of local school districts."); *J.M. v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 743 (M.D. Tenn. 2018) (denying motion to dismiss SEA; "[u]nder the IDEA, the responsibility for ensuring that disabled students receive a free appropriate public education lies with the [SEA]," not merely local school districts (citation omitted)); *Kalliope R. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 141 n.3, 142 (E.D.N.Y. 2010) (denying motion to dismiss SEA where complaint alleged state had adopted policies that "interfere[d]" with IDEA procedures); *New Jersey Prot. & Advocacy, Inc. v. New Jersey Dep't of Educ.*, 563 F. Supp. 2d 474, 490 (D.N.J. 2008) (holding that a private action "may generally challenge the [SEA's] compliance with the IDEA").

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1   IDEA's requirements."); *St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776,

2   784 (5th Cir. 1998) ("Therefore, it seems clear that an SEA may be held responsible if

3   it fails to comply with its duty to assure that IDEA's substantive requirements are

4   implemented." (quoting Gadsby, 109 F.3d at 952)); *Beth V. by Yvonne V. v. Carroll,*

5   87 F.3d 80, 88 (3rd Cir. 1996) (finding an express cause of action against SEA, since

6   "private suits are integral to enforcement of IDEA").

7       This case law confirms that M.C. has a cause of action against CDE, since it is

8   "ultimately responsible" for providing all students with disabilities in the state a

9   FAPE, *Gadsby,* 109 F.3d at 953, even though "different agencies may, in fact, deliver

10  services." *John T. v. Iowa Dep't of Educ.*, 258 F.3d at 864 (internal citations omitted).

11      Plaintiff has made plausible allegations that CDE is violating his rights and

12  those of other students through its implementation of the state ESY regulation and

13  failure to monitor how local districts provide ESY. This is more than sufficient to

14  establish that he has a cause of action against CDE.

15          *a.    The Ninth Circuit's decision in M.M. v. Lafayette Sch. Dist. is*

16              *inapplicable and does not support dismissal.*

17      CDE relies exclusively on *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842 (9th Cir.

18  2014), to argue that there is no private right of action against it. MTD 7. In *Lafayette*,

19  the student claimed that CDE breached its "duty to ensure … fundamental fairness in

20  OAH hearings." *Id.* at 860. The court rejected this, since CDE "has no authority over

21  the OAH." *Id.* The student also challenged, without success, CDE's policy of

22  deferring a complaint investigation while an OAH hearing is pending, since the IDEA

23  regulations compel this result. *Id.* Finally, the student alleged that he had a private

24  right of action under 20 U.S.C. § 1412(a), which includes the SEA's general

25  supervisory authority over local districts, and § 1415(a), which is a mandate for the

26  SEA to create procedural safeguards. *Id.* The court held that neither support a private

27  right of action, without addressing whether one exists under other sections—such as

28  § 1415(i)(2)(A) and § 1415(b)(6), the IDEA provisions that allow M.C. to bring this

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1    suit following an administrative hearing regarding the denial of FAPE. *Id.*

2        The holding in *M.M. v. Lafayette* is narrow and distinguishable on several

3    factual grounds. Here, M.C. alleges that the CDE is responsible for the state ESY

4    regulation and its implementation and that this regulation was the reason he was

5    denied FAPE in his ESY program. SAC ¶ 94–96; Ex. A to SAC at 12-14. In contrast,

6    the plaintiffs in *Lafayette* did not claim that CDE's actions directly impaired the

7    student's educational placement or provision of a FAPE, nor did they appeal from a

8    final administrative decision, as M.C. has.

9        Several other district courts have considered and rejected CDE's claims about

10   *Lafayette.* In *Kristina B.*, the student challenged CDE's failure to implement or

11   maintain adequate procedures regarding residency and in-state residential treatment

12   facilities. 327 F. Supp. 3d at 1240–41. Chief Judge O'Neill denied CDE's motion to

13   dismiss, finding an express private right of action under the IDEA because the

14   student's claims related to evaluation, placement, and provision of FAPE. *Id.* at 1241–

15   42. The court reasoned that the "State fails to show how the broad and express right of

16   action in § 1415(i) does not encompasses Plaintiffs' claims or how the claims here are

17   analogous to those in *Lafayette*." *Id.* at 1241.

18       Similarly, in *Emma C.*, 2015 WL 5029283, at *5, Judge Thelton Henderson

19   observed: "*Lafayette* merely held that there is no express private right of action under

20   20 U.S.C. §§ 1412(a) and 1415(a); it did not address other sections of the IDEA."

21   *Accord Everett H. ex rel. Havey v. Dry Creek Joint Elementary Sch. Dist.*, 2015 WL

22   5444704, at *2 (E.D. Cal. Sept. 15, 2015) ("The Ninth Circuit carefully limited its

23   finding [in *Lafayette*] … to whether those statutes directly conferred such a right. It

24   did not make any decision about whether a legally cognizable right could be

25   inferred").

26       Here, Plaintiff's claims stem from his inappropriate educational placement and

27   the denial of FAPE, which were the direct result of CDE's illegal and discriminatory

28   ESY regulation. Plaintiff's claims are therefore appropriately raised under the broad,

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1   private right of action in § 1415(i)(2)(A) and § 1415(b)(6).

2              *b.     In the alternative, an implied private right of action exists under*

3                      *the IDEA.*

4           At a minimum, M.C. has an implied cause of action against CDE, even

5   assuming *arguendo* that the IDEA does not confer an express cause of action (and it

6   does). The Ninth Circuit in *Lafayette* left open this possibility, since it "decline[d] to

7   reach whether a private right of action can be implied in §§ 1412 and 1415 of the

8   IDEA." 767 F.3d at 860 n. 8.

9           Here, M.C. meets all four factors set out by the Supreme Court to establish an

10  implied private right of action. *See Cort v. Ash,* 422 U.S. 66, 78 (1975).[5] First, he is a

11  member of the class for whose benefit the statute was enacted, *id.*, which is students

12  with disabilities who seek a free appropriate public education. 20 U.S.C. § 1415.

13          Second, there is evidence of Congress' intent to confer a private remedy. *Cort*,

14  422 U.S. at 78. IDEA expressly abrogates state sovereign immunity, 20 U.S.C. §

15  1403, which makes sense only if Congress also intended and anticipated suits against

16  state agencies.[6] It is also telling that Congress explicitly foreclosed a private right of

17  action in one limited instance—for claims against an SEA that staff are not "highly

18  qualified." 20 U.S.C. §1412(a)(14). "[W]here Congress includes particular language

19  in one section of a statute but omits it in another section of the same Act, it is

20  generally presumed that Congress acts intentionally and purposely in the disparate

21  inclusion or exclusion." *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th

22

23  [5] *See also Lake Washington Sch. Dist. No. 414 v. Office of Superintendent of Pub. Instruction*, 634
    F.3d 1065, 1069 (9th Cir. 2011) (applying the *Cort* factors to determine that the IDEA does not

24  confer a private right of action on school districts, as opposed to students and their families).

25  [6] One Congressional report explained that "[i]t would be inequitable for [the IDEA] to mandate State
    compliance with its provisions and yet deny litigants the right to enforce their rights in Federal

26  courts when State or State agency actions are at issue." H.R. Rep. 101-544, at 12 (1990) on the 1990
    IDEA Amendments, reprinted in 1990 U.S.C.C.A.N. 1723, 1734. *See also J.R. ex rel. R. v.*

27  *Waterbury Bd. of Educ.,* 272 F. Supp. 2d 174, 178 (D. Conn. 2001) (finding the second *Cort* element
    satisfied in an IDEA suit against a state educational agency because § 1403 "paves the way for such

28  relief").

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

Cir. 2005) (citation omitted). *See also Morgan Hill Concerned Parents Assoc.*, 2013 WL 1326301 at *7 (provisions of the IDEA "demonstrate that Congress … intended individual parents and students to have private recourse when states shirk their responsibility").

Third, implying a right to sue would be consistent with the statutory purpose. *Cort*, 422 U.S. at 78. Allowing disabled students to challenge CDE's provision of FAPE during the extended school year is consistent with the IDEA's overall purpose, which is to "ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A).

Fourth, the cause of action is not one traditionally relegated to the states to a degree such that implying a right to sue would be inappropriate. *Cort*, 422 U.S. at 78. Federal courts regularly hear IDEA claims against state educational agencies related to the identification, evaluation, placement, or the denial of FAPE. *See* cases cited *supra* note 4.

Special education students such as M.C. do have an express private right of action under 20 U.S.C. § 1415(i)(2) and § 1415(b)(6). But in the alternative, their cause of action is also implied, as it meets the four-part test in *Cort v. Ash.*

### 2. M.C. has sufficiently alleged that CDE's actions and inactions denied him a FAPE.

CDE argues that since it did not directly educate him, M.C. cannot plausibly claim that CDE denied him a FAPE. MTD 7–8.[7] This is incorrect. M.C. alleges action

---

[7] To the extent that CDE is arguing lack of causation without saying so, it is also incorrect. "[C]ausation is satisfied as to [the SEA] because of its alleged violations of its statutory duty to monitor, investigate and enforce violations of the IDEA, and its ultimate responsibility to ensure that, as long as [the plaintiff] is a student in [the state], she is provided with an appropriate FAPE which complies with the law." *Jackson*, 2017 WL 2296896, at *14. *See also Morgan Hill*, 2013 WL 1326301, at *8; *Bryan Indep. Sch. Dist.*, 2007 WL 922215, at *4–5; *Bitsilly v. Bureau of Indian Affairs*, 253 F. Supp. 2d 1257, 1263–64 (D.N.M. 2003) (finding traceability where "Plaintiffs allege that their injuries flow *directly* from Defendants' policy of inaction"). This analysis applies with equal force to Plaintiff's ADA and Section 504 claims, as Plaintiff alleges that CDE fails to meet its

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

and inaction by CDE that led directly to a denial of FAPE for him. First, the state ESY regulation, which CDE enforces and implements, violates IDEA and its implementing regulations. SAC ¶¶ 94-98. Second, M.C. alleges that CDE denied FAPE to M.C. and other similarly situated students by failing to ensure that LAUSD and other school districts provide ESY consistent with IDEA. SAC ¶¶ 92-93, 99-100.

> *a.    The state ESY regulation violates IDEA.*

CDE studiously ignores its role in implementing and enforcing the state ESY regulation, Cal. Code Regs., tit 5, § 3043(g).[8] This regulation flatly contradicts the federal ESY regulation, which provides that public educational agencies (which include CDE),[9] may not limit extended school year services to particular categories of disability or unilaterally limit the type, amount, or duration of those services. 34 C.F.R. § 300.106(a)(3). Section 3043(g) expressly violates federal law by limiting ESY services to students whose disabilities preclude placement in general education settings. SAC ¶ 95. Under § 3043(g), school districts could—and do—offer plainly inappropriate ESY services in segregated, highly restrictive classes to students who are educated in an integrated setting during the regular school year, just as LAUSD did with M.C. SAC ¶¶ 96-97. The regulation also limits the type of services provided during the summer, as it authorizes school districts to consider a limited continuum of placements, without integrated settings—which is exactly what LAUSD did here.

M.C. also alleges that this regulation conflicts with other key requirements of

---

"ongoing obligation … to ensure that … [the student is] free from disability-based discrimination under the Rehabilitation Act and the ADA." *Jackson*, 2017 WL 2296896, at *14.

[8] The state is responsible for adopting "regulations for all individualized education programs for individuals with exceptional needs, including programs administered by other state or local agencies," in accordance with federal law. Cal. Ed. Code § 56100(i).

[9] The federal regulations implementing the IDEA define "public agency" as including the state educational agency, local educational agencies, educational services agencies, nonprofit public charter schools that are not otherwise included as local educational agencies or educational service agencies and are not a school of a local educational agency or educational service agency, and any other political subdivisions of the State that are responsible for providing education to children with disabilities. 34 C.F.R. § 300.33.

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

the IDEA: school districts must consider a continuum of placements, 34 C.F.R. § 300.115; Cal. Ed. Code § 56361; students must be placed in their least restrictive environment, 20 U.S.C. § 1412(a)(5)(A); 34 C.F.R. § 300.114-120; Cal. Ed. Code § 56040.1; and a student's special education services must be individualized to their needs, 20 U.S.C. § 1401(29); Cal. Ed. Code § 56031. SAC ¶ 94-95.

These requirements unquestionably apply during the extended school year period. The U.S. Department of Education has long held the unequivocal position that the least restrictive environment requirement "do apply when an IEP is developed for extended school year services." U.S. Dep't. of Educ., Office of Special Education Programs ("OSEP"), *Letter to Myers*, 213 IDELR 255 (August 30, 1989). OSEP further states that if a school district does not establish a full continuum of public programs for the extended school year period, then it "must meet the LRE requirement by alternative means, such as private placements," for students whose IEPs call for integrated settings. *Id*. OSEP clarified this directive in a subsequent letter, stating that school districts would be required to fund private placements if they were determined to be necessary to implement a child's IEP for ESY services. OSEP, *Letter to Myers*, 16 IDELR 290 (December 18, 1989). *See also* OSEP, *Letter to Skiba*, 18 IDELR 592 (December 16, 1991) (an ESY "program must be provided to the child in the least restrictive educational setting that is appropriate to educate the child").

The Second Circuit addressed this issue head-on in *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014). Based on facts strikingly similar to the present case, the student there claimed that the school district violated the IDEA because it did not offer him a mainstream classroom for his ESY program, even though his IEP team agreed this was his least restrictive environment ("LRE"). *Id*. at 151, 162. The Second Circuit agreed that the IDEA's requirements for FAPE and LRE apply to ESY placements just as they do to school-year placements. *Id.* at 165. A school district must still consider an appropriate continuum of placements and offer a placement that provides FAPE in the student's LRE. *Id.* But a school district

1   need not itself operate all of the different programs on this continuum and may

2   "include free public placements at educational programs operated by other entities,

3   including other public agencies or private schools." *Id.* Plaintiff alleges that the state

4   ESY regulation here does just the opposite and thus denies students FAPE in the LRE.

5           b.      *CDE fails to ensure that local districts provide an appropriate type*

6                   *and duration of ESY services.*

7           CDE's assertions regarding a different subsection of the state regulation,

8   § 3043(d), are also at odds with the IDEA and sidestep M.C.'s allegations. CDE

9   asserts that school districts can and do offer extended school year services for more

10  than 20 days—but M.C. alleged exactly the opposite. M.C. alleged that, in the absence

11  of instruction by CDE, school districts limit the duration of extended school year

12  services by treating the 20-day requirement within § 3043(d) as the maximum length

13  of services, rather than as the minimum. SAC ¶ 99. School districts do so without

14  considering the student's individual needs, in violation of the IDEA. *Id.* In considering

15  CDE's Motion, the Court must take all factual allegations set forth in the complaint as

16  true and construed in the light most favorable to M.C. *See D.D. v. LAUSD*, 984 F.3d at

17  781–82. Accordingly, CDE cannot prevail on a motion to dismiss by simply asserting

18  different facts, as it does here.

19          Finally, CDE's argument mischaracterizes its own role as a state educational

20  agency and the IDEA itself. In an effort to avoid liability, CDE disingenuously shifts

21  full responsibility for providing FAPE to local educational agencies, dismissing its

22  powerful role as the state educational agency. MTD 7–8. M.C. alleges that LAUSD

23  and other school districts violated the IDEA as to the provision of extended school

24  year services and denied FAPE to M.C. and other students. Based on its broad

25  responsibilities as the state educational agency, it is more than plausible that CDE is

26  liable for these failures. M.C.'s allegations that CDE failed to supervise LAUSD and

27  other school districts and failed to ensure that M.C. and other students receive FAPE

28  during the summer sufficiently state a claim under the IDEA against CDE.

In sum, M.C. has sufficiently alleged that CDE denied him FAPE by enforcing and implementing an unlawful state regulation, by failing to supervise school districts, and by failing to ensure that M.C. and other students receive FAPE.

### 3. M.C. has exhausted administrative remedies under the IDEA.

Plaintiffs must generally exhaust administrative remedies before filing a federal civil action seeking relief available under the IDEA. 20 U.S.C. § 1415(*l*).[10] CDE attempts to rewrite the statute, claiming that administrative exhaustion under the IDEA requires Plaintiff to obtain an administrative ruling in his favor, including a finding that he was denied FAPE. MTD 6. CDE is simply incorrect on the law: plaintiffs exhaust administrative remedies by obtaining a <u>final</u> decision from OAH. See 20 U.S.C. §§ 1415(f), (i), (*l*). Exhaustion has never required a <u>favorable</u> ruling of a denial of FAPE, as CDE claims. To the contrary, IDEA requires an <u>adverse</u> decision: the statute permits judicial review only for a party "aggrieved" by the administrative decision. 20 U.S.C. § 1415(i)(2)(A).

CDE's own version of the exhaustion standard also leads to an absurd result: only a student who wins before OAH and obtains a favorable ruling that FAPE was denied may appeal, but they will have no reason to do so; while one who loses, as M.C. did, cannot appeal. For this same reason, CDE's oblique suggestion that "until the District Court reverses OAH's decision, any potential claim against CDE is not ripe," MTD 7, fails.[11]

---

[10] The Ninth Circuit "has advised that a challenge to a complaint based on administrative exhaustion, which is an affirmative defense, ordinarily should be addressed through a motion for summary judgment rather than through a motion to dismiss under Rule 12(b)." *D.D. v. LAUSD*, 984 F.3d at 781 (citing *Albino v. Baca*, 747 F.3d 1162, 1168, 1171 (9th Cir. 2014) (en banc)). But as in *D.D.*, "the issue of exhaustion in this case is one of law; the parties dispute the significance of the alleged facts, not the facts themselves." *Id.*

[11] An inquiry into ripeness often "coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). A plaintiff's failure to seek administrative review and obtain an adverse decision may have bearing on whether the plaintiff suffered an injury in fact and thus on ripeness. *See Summer H. v. Fukino*, No. Civ. 09–

---

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1    In support of this nonsensical argument, CDE cites *Paul G. v. Monterey*

2  *Peninsula Unified Sch. Dist.*, 933 F.3d 1096 (9th Cir. 2019), *cert. denied*, 140 S. Ct.

3  2672 (2020), and two unpublished district court cases, but none support the agency's

4  position. All involved plaintiffs who failed to exhaust because they either settled

5  before the administrative hearing or never filed at all. *See Paul G.*, 933 F.3d at 1098

6  (student settled); *Martinez v. Newsom*, No. 5:20-cv-01796-SVW-AFM, 2020 WL

7  7786543 at \*6 (C.D. Cal. Nov. 24, 2020) (student settled); *Brach v. Newsom*, No.

8  2:20-cv-06472-SVW-AFM, 2020 WL 7222103 at \*10-11 (C.D. Cal. Dec. 1, 2020)

9  (student did not file an administrative complaint).

10    CDE also mischaracterizes the holding in *Paul G.*, claiming that the student

11  could not bring IDEA claims against CDE "without having shown at OAH that he was

12  denied FAPE by the out-of-state residential placement." MTD 6. Instead, the court

13  held plainly that the plaintiffs there failed to exhaust against CDE or the local district

14  because they settled and did not receive a <u>final</u> decision from OAH. *Paul G.*, 933 F.3d

15  at 1098. Courts have declined to review IDEA claims where plaintiffs settle at the

16  administrative stage because "settlement is not tantamount to a substantive decision

17  following a hearing; it does not provide the agency an opportunity to apply its

18  expertise, create a solution, or develop the evidence and testimony to assist with

19  judicial review." *Kristina B.*, 327 F. Supp. 3d at 1250. *Paul G.* merely reaffirms that a

20  "principal purpose of requiring administrative exhaustion … is to ensure the agency

21  has had an opportunity to rule on a claim before a plaintiff goes to court." *Paul G.*,

22  933 F.3d at 1102 (relying on *Payne v. Peninsula Sch. Dist.,* 653 F.3d 863, 875–76 (9th

23  Cir. 2011)).

24    Here, in contrast, M.C. went to hearing, submitted documentary evidence, and

25

26  _____

00047 SOM/BMK, 2009 WL 1249306, at \*6–7 (D. Haw. May 6, 2009) (finding plaintiffs' claims

27  unripe, where their health services had not yet been cut and administrative reviews were pending).
But this inquiry is unnecessary in the present case, where M.C. did seek administrative review and

28  obtain an adverse decision.

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1    examined witnesses, creating a three-volume record that exceeds 1,000 pages in

2    length. M.C. litigated his IDEA claims through to a final hearing decision where the

3    agency had the opportunity to rule on Plaintiff's IDEA claims. SAC ¶ 3. M.C.

4    therefore exhausted his IDEA claims, and by extension, his ADA and Section 504

5    claims, which are discussed in the following section.[12]

6    **B.    M.C has stated a claim under the ADA and Section 504 against CDE.**

7       **1.   M.C. alleges that, as a result of the State ESY regulation, he was**

8          **denied accommodations he needed to access his education.**

9    Title II of the ADA, 42 U.S.C. §§ 12131 et seq., and Section 504 of the

10   Rehabilitation Act of 1973, 29 U.S.C. § 794, are federal anti-discrimination laws.

11   Under Title II, "no qualified individual with a disability shall, by reason of such

12   disability, be excluded from participation in or be denied the benefits of the services,

13   programs, or activities of a public entity, or be subjected to discrimination by any such

14   entity." 42 U.S.C. § 12132.[13] The implementing ADA regulations spell out some ways

15   this discrimination occurs, such as by denying someone an equal opportunity to

16   benefit, 28 C.F.R. § 35.130(b)(1)(ii, iii), failing to offer services in the most integrated

17   setting appropriate, 28 C.F.R. § 35.130(d), and administering a program so as to

18   perpetuate discrimination, 28 C.F.R. § 35.130(b)(3). Courts have interpreted both the

19   ADA and Section 504 to require "reasonable" modifications to existing practices to

20   "accommodate" persons with disabilities." *Alexander v. Choate*, 469 U.S. 287, 300–

21   301 (1985); *see also* 28 C.F.R. § 35.130(b)(7)(i) ("A public entity shall make

22   reasonable modifications … necessary to avoid discrimination ….").

23

24

25   [12] CDE uses the same faulty logic to argue that Plaintiff's ADA and 504 claims are also barred for
     failure to exhaust. MTD 9-10. Rather than repeat the above argument, Plaintiff reiterates that M.C.
26   has exhausted his IDEA claims. CDE's discussion of *Fry v. Napoleon Community Schools*,
     __U.S.__, 137 S. Ct. 743 (2017) is thus beside the point.

27   [13] Section 504 has virtually identical language. *See* 29 U.S.C. § 794(a). Title II and Section 504 are
     analyzed consistently and discussed together here. *See Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7
28   (9th Cir. 2002).

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

In the context of public education, Title II and Section 504 require "meaningful access" to educational services. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 n. 14 (9th Cir. 2008); *see also Alexander*, 469 U.S. at 301 ("[T]o assure meaningful access, reasonable accommodations in the … program or benefit [receiving federal financial assistance] may have to be made."); *Bonner v. Lewis,* 857 F.2d 559, 561 (9th Cir. 1988) (same); *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (applying the elements of a claim under Title II or Section 504 to public education). The mandates of Title II and Section 504 differ from those of the IDEA;[14] however, as here, "the denial of a FAPE may itself serve as the basis for an ADA or § 504 claim." *D.D. v. LAUSD*, 984 F.3d at 784 n. 10.

Here, the program to which M.C. seeks access is public education, not simply ESY. To have meaningful access to his public education and opportunities equal to those of their non-disabled peers, M.C. and many other students need the accommodation of additional services over the summer, since any "interruption of the[ir] educational programing may cause regression" with "limited recoupment capacity." Cal. Code of Regs, tit. 5, § 3043. Neither Defendant disputes the factual finding of the IEP team and the ALJ that M.C. will regress and his skills will deteriorate if he goes without services for three months over the summer. SAC ¶¶ 113-114; Ex. A to SAC at 8, ECF No. 35-1.

To accommodate the many students who otherwise face regression and learning loss over a three-month summer break, LAUSD and other school districts provide ESY classes. The state ESY regulation facially discriminates against one group of

---

[14] "[W]hereas the IDEA aims to provide a child with 'the capability to access learning within his classroom,' the ADA and Section 504's goal is to give children with disabilities 'reasonable accommodations so they can access the school program at all—i.e., to ensure they are not excluded from school … and, as a result, denied *the opportunity* to obtain the individualized attention necessary to receive an appropriate public education.'" *Smith v. Orcutt Union Sch. Dist.*, No. 2:20-cv-00087-RGK-MAA, 2021 WL 527124, at *2 (C.D. Cal. Feb. 10, 2021) (quoting *D.D. v. LAUSD*, 984 F.3d at 783) (internal quotation marks omitted).

1  disabled ESY students—those who are integrated in regular classrooms. SAC, ¶¶ 94 -
2  97, 117-121. The regulation authorizes districts to deny the accommodation of an
3  extended school year to this large group of students, who make up roughly half the
4  special education students in California. SAC ¶ 17. As a result, LAUSD and other
5  school districts provide the accommodation of extended school year classes only to
6  disabled students placed in segregated special day classes and other restricted settings.

7      CDE points out that in LAUSD, "general education summer school was not
8  offered to either nondisabled or disabled students," suggesting that M.C. could not
9  have suffered discrimination. MTD 11. CDE even suggests that M.C. has no cause for
10 complaint, since he "received a benefit from LAUSD (ESY services) that was not
11 available to nondisabled students." *Id.*

12     CDE is incorrect in suggesting there can be no discrimination under the ADA
13 on these facts. CDE fails to understand that the program at issue here is not ESY or
14 summer school but public education itself. M.C. needs extended school year services
15 consistent with his IEP to have an opportunity to benefit that is equal to that provided
16 to non-disabled students. Since they are not as subject to regression, they simply do
17 not need extended school year classes.

18     Further, the fact that many districts, including LAUSD, do not offer "regular"
19 summer school to non-disabled students has no bearing on M.C.'s ADA claim. A
20 district-provided ESY program is not the only accommodation that will prevent a
21 student's skills from deteriorating. The accommodation could take many forms
22 depending on the student's academic and social needs, including contracting with a
23 non-public agency or school, or a private camp.[15] Such programs would enable a
24 student such as M.C. to maintain his social skills and problem-solving skills. Even
25 during the regular school year, districts sometimes provide accommodations directly

26
27 [15] *See* 20 U.S.C. § 1412(a)(10)(B)(i) (school districts may place a student with a disability in a
   private school to provide a FAPE); *id.* § 1412(a)(10)(C)(ii) (school districts that fail to offer a FAPE
28 may be required to reimburse parents who place their child in a private school for that purpose).

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1   with district staff, and sometimes contract out to a non-public agency, such as a

2   private school. SAC ¶ 116.

3          Even looking at ESY as the program in question, the state ESY regulation

4   discriminates between groups of disabled people, providing services to one group

5   while denying them to others who have an equal need and risk of regression. This

6   distinction also violates Title II, as the Ninth Circuit held in *Lovell v. Chandler,* 303

7   F.3d 1039, 1054 (9th Cir. 2002), and which CDE itself cites, MTD 10. In *Lovell,*

8   Hawaii categorically excluded one group of higher-income disabled people from a

9   part of its Medicaid health insurance program. The state argued that some lower-

10  income disabled people still qualified for a different part of its Medicaid program. The

11  court responded, "[t]he State's appropriate treatment of some disabled persons does

12  not permit it to discriminate against other disabled people under any definition of

13  'meaningful access.'" *Id.* at 1054. *See also Mark H.*, 513 F.3d at 938 (citing *Lovell*

14  and holding that "evidence that appropriate services were provided to *some* disabled

15  individuals does not demonstrate that others were not denied meaningful access

16  'solely on the basis of their disability.'")

17          **2.  M.C has sufficiently alleged that CDE is liable for the discrimination**

18              **he experienced, even if CDE did not directly provide his services.**

19          In a single sentence, CDE suggests it should be dismissed because it "was not

20  the public agency that was responsible for providing, and provided, ESY services to

21  Plaintiff; LAUSD was," and so presumably, could not have discriminated against him.

22  MTD 11. This defense is unfounded.

23          A state educational agency such as CDE "has an obligation to supervise the

24  local districts to ensure compliance" with federal anti-discrimination statutes such as

25  Title II and Section 504. *Idaho Migrant Council v. Idaho Bd. of Educ.*, 647 F.2d 69,

26  71 (9th Cir. 1981) (so holding with regard to Title VI of Civil Rights Act, which was

27  the model for Section 504). This is because

28

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

> Title II's obligations apply to public entities regardless of how those entities chose to provide or operate their programs and benefits …. The same principle applies to [Section 504] violations committed by contractors …. The law is clear—the State Defendants may not contract away their obligation to comply with federal discrimination laws.

*Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013); *see also Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1069 (9th Cir. 2010) (finding that state department of corrections was required "to ensure ADA-compliant conditions for prisoners and parolees being held under its authority," regardless of whether the state directly provided them housing or arranged for local counties to provide housing); *Armstrong v. Brown*, 732 F.3d 955, 960 (9th Cir. 2013) (explaining that state officials violated ADA by "fail[ing] to assist the counties with the development of appropriate disability-related policies" relating to state prisoners held in county jails; stating that state officials have an "obligation to assist in preventing further violations" in county jails); *Larry P. by Lucille P. v. Riles*, 793 F.2d 969, 980-81 (9th Cir. 1984) (state officials held liable under Section 504 for failing to ensure that IQ tests implemented by local school districts were validated for the specific purpose for which they were used). Thus, if as Plaintiff alleges, California's school districts are violating these statutes, CDE may be held legally responsible.

Nor can CDE evade its liability under federal anti-discrimination law by shifting blame to local school districts such as LAUSD. *See* 28 C.F.R. § 35.130(b)(1); *Armstrong v. Schwarzenegger*, 622 F.3d at 1074. In *Emma C. v. Eastin*, 985 F. Supp. 940 (N.D. Cal. 1997), a disabled student alleged violations of Title II and Section 504 by a local school district and alleged that the state agency "failed to monitor [the district's] compliance with state and federal laws." *Id.* at 948. The court denied the CDE's motion to dismiss, finding that the complaint adequately alleged that the state agency "perpetuated this discrimination." *Id.*; *see also Jackson*, 2017 WL 2296896 at *12 (denying SEA's motion to dismiss 504 claim that state refused to modify discriminatory policies and "refuse[d] to take any affirmative action to investigate,

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1   monitor, and correct the 'systemic and discriminatory' violations, resulting in
2   continued segregation of students with severe disabilities [and] depriving them of a
3   FAPE."). As these cases reveal, in addition to its own conduct that directly
4   discriminates against students with disabilities, a state educational agency may be held
5   liable under the ADA and Section 504 when it aids or perpetuates discriminatory
6   conduct by local school districts.

7   The ADA applies to "all services, programs, and activities provided *or made*
8   *available* by public entities." 28 C.F.R. 35.102(a) (emphasis added). "A public entity,
9   in providing any aid, benefit, or service, may not, directly *or through contractual,*
10  licensing, or other arrangements, on the basis of disability" discriminate against
11  individuals with disabilities. 28 C.F.R. § 35.130(b)(1) (emphasis added). Further, a
12  public entity may not "[a]id or perpetuate discrimination . . . by providing significant
13  assistance to an agency, organization, or person that discriminates on the basis of
14  disability in providing any aid, benefit, or service to beneficiaries of the public entity's
15  program." 28 C.F.R. § 35.130(b)(1)(v).[16]

16  As discussed above, CDE administers the special education system in
17  California and has oversight responsibility over its contractors, including LAUSD. *See*
18  *supra* Part IV.A.1.; SAC ¶¶ 128, 135. Through local school districts, CDE has also
19  "made available" a public education to students such as M.C. 28 C.F.R. § 35.102(a);
20  SAC, ¶¶ 133.

21  Here, M.C. alleges that CDE failed to oversee LAUSD and other school
22  districts that have wrongly limited ESY services. SAC ¶¶ 136–140, 144, 167–168.
23  This inaction is enough for liability. *See Alexander*, 469 U.S. at 295 (Section 504 was
24  designed to address "thoughtlessness and indifference—[ ] benign neglect."). Case

25
26  _____
    [16] Regulations implementing Section 504 contain parallel language. *See* 45 C.F.R. § 84.4(b). The
27  substantive standards of the two statutes are "almost identical" and "courts typically analyze the two
    provisions together." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 467 (9th
28  Cir. 2015).

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E

1  law confirms that Title II and Section 504 impose an affirmative obligation on public

2  entities to ensure meaningful access to their programs. *See, e.g.*, *Dunlap v. Ass'n of*

3  *Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998) (ADA creates "an

4  affirmative duty" to provide a "reasonable accommodation").

5      It is particularly clear that inaction by a public entity may violate Title II and

6  Section 504 when construing claims of discriminatory methods of administration

7  under the statutes' implementing regulations. This regulation provides:

8      A public entity may not, directly or through contractual or other arrangements,
       utilize criteria or *methods of administration*: (i) That have the effect of
9      subjecting qualified individuals with disabilities to discrimination on the basis
       of disability, [or] (ii) That have the purpose or effect of defeating or
10     substantially impairing accomplishment of the objectives of the public entity's
       program with respect to individuals with disabilities ….
11

12

13  28 C.F.R. § 35.130(b)(3) (emphasis added); *see also* 45 C.F.R. § 84.4(b)(4) (same).

14  The complaint alleges violations of both regulations. SAC ¶¶ 44, 140, 166–68.

15      Cases alleging violation of the methods of administration regulations based

16  solely on allegations of state inaction are frequently sustained because "[t]he methods-

17  of-administration regulation makes clear that a know-nothing, do-nothing policy of

18  non-administration is a privately actionable violation of the ADA." *Dunn v. Dunn*,

19  318 F.R.D. 652, 665 n.12 (M.D. Ala. 2016) (collecting circuit court cases on the

20  "affirmative obligations" of public agencies to proactively address discrimination),

21  *modified on other grounds sub nom. Braggs v. Dunn*, No. 2:14CV601-MHT, 2020

22  WL 2395987 (M.D. Ala. May 12, 2020); *see also State of Connecticut Office of Prot.*

23  *& Advocacy v. Connecticut*, 706 F. Supp. 2d 266, 276–78 (D. Conn. 2010) (denying

24  motion to dismiss where plaintiffs alleged that the agency administering a long-term

25  care system failed to assess, identify, and determine plaintiffs' need for integrated

26  settings). Here, CDE has taken a "do-nothing" approach to discrimination in ESY

27  programs, in violation of the mandates of the ADA and Section 504.

28

1    V.   **CONCLUSION**

2         This court should deny CDE's motion to dismiss. If the court is inclined to

3    grant CDE's motion, Plaintiff respectfully requests leave to amend.[17]

4

5     Dated: April 27, 2021                     Respectfully submitted:

6
                                                DISABILITY RIGHTS CALIFORNIA
7

8                                               /s/ Melinda Bird
                                                _____
9                                               Melinda Bird
                                                Andria Seo
10                                              Lauren Lystrup

11
                                                VANAMAN GERMAN LLP
12                                              David German

13
                                                Attorneys for Plaintiff
14

15

16

17

18

19

20

21

22

23

24  _____

25  [17] Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory
    motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of
26  the amendment, [or] futility of the amendment…" *Everett H.*, 5 F. Supp. 3d at 1190 (quoting *Foman*
    *v. Davis,* 371 U.S. 178, 182 (1962) and citing *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d
27  1048, 1052 (9th Cir.2003) (listing the *Foman* factors)). Dismissal without leave to amend is proper
    only if it is clear that "the complaint could not be saved by any amendment." *Id.* (quoting *Intri–Plex*
28  *Techs. v. Crest Group, Inc.,* 499 F.3d 1048, 1056 (9th Cir.2007)) (citations omitted).

Plaintiff's Opposition to Defendant CDE Motion to Dismiss
Case No.: 2:20-CV-09127-CBM-E